Wash, J.,
delivered the opinion of the Court. [Not returned at last term.]
This was an action of assumpsit commenced in the St. Louis Circuit Court by the plaintiff in error against the defendants in error. The first count of the declaration alledges a special agreement between the plaintiff and the defendants for the transportation by the plaintiff for the defendants of 230,529 lbs. of lead from Galena to St. Louis, for the consideration of 37 1-2 cents per hundred pounds, to be paid on delivery. Plaintiff then avers the transportation and delivery according to contract, and the non-payment of freight. The second count is in indebitatus assumpsit, for freight and transportation- of other lead. The defendants pleaded non-assumpsit, and set-off for lead, goods, wares and merchandize, sold and delivered by defendants to plaintiff. The second plea was traversed, and issue joined on both. At the March term of the Circuit Court, 1831, the cause was tried by a jury, and both issues found for the plaintiff, and damages assessed at the sum of $309 64-100; the defendants afterwards moved for a new trial, which was granted; to which the plaintiff excepted and filed a hill of exceptions, setting out the evidence and reasons for the new trial. By this bill of exceptions it appears that in the month of May, 1829, the defendants were the owners of4,755 bars of lead, weighing 311,552 lbs., then lying at Galena, which they wished to have transported to St. Louis. About -the same time the *252 plaintiff, Johnson, employed one Thrasher to obtain freight for four flat boats, and to pilot them from Galena to St. Louis, which boats had been built by the plaintiff and his brother, Warren Johnson, Benjamin Hoffman and Malcolm H. Smith, in partnership. That Thrasher was employed by the plaintiff alone, who appeared to have the whole management; but who owned the boats after they were built witness did not know, but heard the plaintiff say that his brother, Warren, was a partner, but witness was employed by Whiting Johnson, and accounted to him. The boats are designated as Nos. 1, 2, 3 and 4. Thrasher contracted with Thompson, one of the defendants, to transport lead for defendants. Thrasher accordingly proceeded to load the four flat boats at his own discretion, putting such part of the lead as he thought proper into each boat, and after the boats were loaded, executed to the defendants in his own name four separate bills of lading in the usual form; by which it appears that there were shipped on board lío. 1, 1,200 bars, weighing 78,600 lbs.; on No. 2, 1,237 bars, weighing 81,023 lbs. j on No. 3, 1,300 bars, weighing 85,150 lbs. and on No. 4, 1,018 bars, weighing 66,779 lbs. Thrasher, in charge of the four boats,, proceeded with them to St. Louis, navigating them together and shifting lading from one to the other as occasion required ; that Thrasher first landed above St. Louis, and proceeded with two boats at a time. The two first were landed safely, but in attempting to land the other two, the boat No. 2 was sunk and 412 bars of lead wholly lost. All the lead, with the exception of these 412 bars, was delivered to the defendants, who paid over to Thrasher §554 84-100, who executed a receipt therefor to the defendants, dated July 8th, 1829, by which he acknowledged to have received that, sum in part of freight of four flat boats of lead-from Galena to St. Louiswhich sum, after deducting expenses, Thrasher paid over to-Johnson, the plaintiff. Thrasher informed defendant, Thompson, that he was acting for plaintiff, Johnson. At the trial the defendants moved several instructions, which were refused, and the Court gave other instructions, under which the jury having found for the plaintiff,, the defendants moved for a new trial, which was granted, and the decision of the Court in giving the instructions was excepted to by the defendant, and the plaintiff excepted to the granting the new trial. Afterwards at the November term, 1831,the cause was again tried, neither party requiring a jury, the Court found the issues for the defendants and gave judgment accordingly, to reverse which this writ of error is prosecuted. At this trial a hill of exceptions was tendered by the plaintiff' and signed; by the Judge, which states that "on the trial of this cause the following evidence and admissions were read in evidence to the Court, sitting as a jury, to. wit: (here the evidence and admissions being the same which were read on the former trial, and which is preserved in the bill of exceptions then taken, and which forms part of this hill of exceptions, are omitted). On this evidence and the admissions, the Court gave judgment for the defendants,” &e. Upon this state of facts it is assigned for error,
First. That the Court granted a new trial.
Second. That it found the issues for the defendants against the evidence.
Third. That it gave judgment for the defendants.
The second and third errors assigned may he considered together, and will be first disposed of. It cannot be assigned for error that the Court gave an improper verdict. The proper course in such a case is to move for a new trial, setting aside the finding of the Court, in the same manner as in case of an improper finding by a jury. Upon the refusal of the Court to set aside its own finding, and award a new trial, a writ of *253 error lies, and when the facts are all properly preserved, this Court can see if the Court helow decided the law correctly or not. Having found the facts for the defendants, the judgment followed the verdict as a thing of course. The error first assigned presents a new question, and one of some difficulty.
Having come to the conclusion, however, that the granting of a new trial by the Circuit Court can in no case he assigned for error, it is rendered unnecessary to look into the record of the first trial, or to discuss the several questions which have been presented upon that record. Mr. Bird, for the plaintiff in error, insists that there is no difference between granting a new trial and refusing a new trial by the Circuit Court; that the injury sustained by the suitor, and the error committed by the Court, where either act is done against the law and equity of the particular-case, is precisely the same, or of the same character, and that the general powers of this Court (see Rev. Code, p. 635, sec.. 50) extend equally to both cases.
We think differently, and are disposed to place this question upon the same footing with continuances improperly granted. Much injury may result, it is true, from both acts, whether they be properly or improperly done; but it cannot be seen and determined at the time, that in the end injury or injustice will be done ; in either case the error committed in granting the new trial may be corrected on the second trial, or if persevered in, may be corrected on writ of error, the facts being properly preserved on the last trial. The Court not being unanimous on this point, it may be well in this particular case to state, that in looking into the record, a majority of the Court (differently constituted) think the Circuit Court erred not only in giving the instructions which were given, but also in refusing to give the sixth instruction asked for by the defendants; and therefore that the new trial was properly granted, so that on either point the judgment of the Circuit Court would be affirmed with costs.,